RECEIVED
IN ALEXANDRIA, LA.

MAY 3 1 2012

TONY R. MOORE, CLERK
BY_____
          DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **GEORGE EVANS** | **CIVIL ACTION NO. 11-777** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **I-FLOW CORPORATION, n/k/a I-FLOW, LLC, ET AL.** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court are two motions in the above-captioned case: (1) a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to strike pursuant to Fed. R. Civ. P. 12(f) filed by defendant I-Flow, LLC ("I-Flow")[1] and (2) a motion to amend the complaint by plaintiff George Evans ("Plaintiff").[2] For the reasons expressed below, the court finds that Plaintiff's motion to amend should be GRANTED and I-Flow's motion to dismiss and to strike should be GRANTED in part and DENIED in part.

**I.   RELEVANT FACTS**

Plaintiff filed the instant suit in the Superior Court of New Jersey for Middlesex County on August 31, 2010.[3] On December 9, 2010, I-Flow removed the suit to the United States District Court for the District of New Jersey.[4] The suit was transferred to this court on May 23, 2011.[5]

---

[1] R. 61.
[2] R. 71.
[3] R. 1.
[4] Id.
[5] R. 45, 46.

1

Plaintiff alleges personal injury allegedly arising from use of certain continuous infusion therapy pumps ["pump(s)"] following two (2) surgical procedures on his shoulder. Plaintiff's original complaint alleges that a surgeon affixed a pump manufactured by I-Flow to his shoulder on July 15, 2003 and again on October 9, 2003. Plaintiff alleges that the pump was connected directly to his shoulder joint by a catheter emanating from the pump and implanted under the skin and that the pump injected anesthetics directly into the shoulder joint continuously for the purpose of managing plaintiff's post-surgical pain.

Plaintiff alleges that I-Flow's pumps were unfit for implantation directly into his shoulder joint and that, as a result of this design and use defect, he developed chondrolysis[6] and subsequently required a total shoulder replacement on September 1, 2009. Plaintiff alleges ongoing pain and lost functional capacity impacting his daily life, in consideration of which he asks for money damages.

## II.   APPLICABLE STANDARD

As amended, Fed. R. Civ. P. 56(a) provides, in part, that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[7]

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue

---

[6] Chondrolysis is a condition defined as "the disappearance of articular cartilage as the result of lysis or dissolution of the cartilage matrix and cells." www.dictionary.com

[7] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard. See advisory committee comments to Rule 56 (2010 amendments).

2

remains for trial.[8] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[9]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[10] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[11] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt" as to the material facts.[12] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[13]

### III. ANALYSIS

I-Flow's motion first asserts that plaintiff's claims for strict liability design defect, strict liability failure to warn, breach of implied warranty, punitive damages, negligence, gross negligence, negligent misrepresentation, fraud and violation of the Consumer Protection Act should be dismissed because such claims are precluded by application of the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:800.51, et seq.

---

[8] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[9] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[10] Fed. R. Civ. P. 56(c)(2).
[11] Fed. R. Civ. P. 56(c)(1).
[12] Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 477 U.S. 242 (1986).
[13] Id.

After I-Flow filed its motion to dismiss and to strike, plaintiff filed his first motion for leave to amend his complaint. Plaintiff acknowledges that his original complaint does not conform to the LPLA and cites the fact this suit was originally filed in New Jersey as support for leave to amend.[14] Although plaintiff characterizes his motion as being unopposed, I-Flow responds by emphatically opposing a grant of leave to amend and asserts that plaintiff's proposed amended complaint is still flawed such that dismissal remains appropriate in this case.

Fed. R. Civ. P. 15(a)(2) provides that a party may amend a pleading only with the opposing party's consent or with leave of court, when such amendment is not as of right under Subsection (a)(1), and such leave should be freely given when justice so requires.

Whether or not to grant leave of court to amend a pleading lies within the discretion of the trial court.[15] Considering the liberal amendment policy evident in Rule 15, a motion for leave to amend should not be denied unless it arises out of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party[.]"[16]

In this case, I-Flow points to no factor which would merit denial of plaintiff's motion, particularly in light of the fact that plaintiff has not previously sought amendment in this matter. Finding no reason why amendment should be denied, the court will grant plaintiff's motion to amend his original complaint and shall, henceforth, reference only plaintiff's "First Amended Complaint" which was filed as an attachment to his memorandum in opposition to I-Flow's motion to dismiss and to strike.[17]

---

[14] R. 71 at p. 2-3.
[15] Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971).
[16] U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc., 336 F.3d 375, 386 (5th Cir. 2003) quoting Foman v. Davis, 371 U.S. 178, 230 (1962).
[17] R. 71-1.

## A.   BREACH OF WARRANTY

Plaintiff's amended complaint asserts claims for defective design, inadequate warning, breach of express warranty and violation of warranty of redhibition.[18]  I-Flow asserts that plaintiff's claim for breach of express warranty fails under the LPLA and the federal pleading requirements because, <u>inter alia</u>, it fails to identify the specific statements or portion of the warranty that was breached.  Citing <u>Grenier v. Medical Engineering Corporation</u>,[19] I-Flow asserts that plaintiff's lack of specificity should result in dismissal.  In <u>Grenier</u>, the Western District Court found that plaintiff's claim for breach of express warranty should be dismissed because plaintiff failed allege any facts in support of the warranty claim and noted that plaintiff failed to even identify which portion of the express warranty was allegedly breached.[20]

Plaintiff argues that his complaint adequately states a claim for breach of express warranty under the LPLA under the reasoning of the court in <u>King v. Bayer Pharmaceuticals Corp.</u>[21]  In <u>King</u>, the Monroe Division of the Western District Court considered a motion to dismiss by defendant Bayer, which alleged that plaintiff's breach of express warranty claim was inadequately stated in the complaint.  Plaintiff's complaint alleged that Cipro, a drug manufactured by Bayer, was expressly warranted as "safe and effective as clinically tested and was of merchantable quality and fit for the use for which the drug was intended."[22]  The court found that plaintiff's complaint alleged adequate facts under the LPLA, even though plaintiff's complaint failed to entitle his claims correctly under the LPLA.

The LPLA provides that a product is unreasonably dangerous when it does not conform to an express warranty made at any time by a manufacturer about the product if the express

---

[18] <u>Id.</u>
[19] 99 F.Supp.2d 759 (W.D. La. 2000).
[20] <u>Id.</u> at *767.
[21] 2009 WL 2135223 (W.D. La. 2009).
[22] <u>Id.</u> at *5.

5

warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was false.[23] Under the LPLA, an express warranty is

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance...[but] does not mean a general opinion about or general praise of a product...[24]

As cited above, we consider this issue within the context of a Rule 12(b)(6) motion to dismiss. Dismissal of a complaint before discovery is an extraordinary remedy and we find it inappropriate as to plaintiff's express warranty claim.[25]

Our review of plaintiff's amended complaint shows that plaintiff alleges that I-Flow made an express warranty as to the pain pumps at issue; that plaintiff was induced to use the pain pumps because of such warranty; that the product failed to conform to the express warranty and, that the plaintiff sustained damages because the express warranty was untrue.[26] Thus, we find that plaintiff's complaint adequately provides notice to I-Flow of the nature of plaintiff's claim against them under La. R.S. 9:2800.58.[27]

Although we agree that plaintiff does not point to the specific warranty language it alleges was violated, such is not a fatal flaw at this stage of litigation. The result in Grenier was proper in that case, but inappropriate here because, in Grenier, the court reviewed the issue within the context of summary judgment and, as is axiomatic, the plaintiff in that case was bound to come forward with specific factual allegations in response to a motion for summary judgment.

---

[23] La. R.S. 9:2800.58; Broussard v. Procter & Gamble Co., 463 F.Supp.2d 596 (W.D.La. 2006).
[24] La. R.S. 9:2800.53(6).
[25] Conley v. Gibson, 355 U.S. 41 (1957); Kaiser Aluminum & Chemical Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982).
[26] R. 71-1 at Count IV, p. 15; La. R.S. 9:2800.58; Broussard, 463 F.Supp.2d at 611 citing Caboni v. General Motors Corp., 278 F.3d 448, 455 (5th Cir. 2002).
[27] Fed. R. Civ. P. 8(a).

Therefore, because we are obliged to construe the pleading liberally in favor of the plaintiff, as was the court in <u>King</u>, we find that defendant's motion to dismiss should be denied as to plaintiff's LPLA express warranty claim.

### B. PUNITIVE DAMAGES

I-Flow's motion also asks the court to dismiss any purported claim against it for punitive damages, noting that plaintiff's amended complaint contains a prayer for such damages as shall "adequately compensate Plaintiff and punish the Defendants."[28] While the court does not construe this singular reference to punishment as a claim for punitive damages in earnest, we do agree with I-Flow's observation that punitive damages are not authorized by the LPLA or Louisiana law of redhibition.[29] Accordingly, to the extent that plaintiff's complaint purports to state a claim for punitive damages, such claim will be dismissed with prejudice.

### C. REMAINING CLAIMS

I-Flow's motion does not address plaintiff's remaining LPLA claims of defective design and inadequate warning and plaintiff's warranty of redhibition claim. Accordingly, these claims shall stand for further proceedings before this court.

### IV. CONCLUSION

The court has carefully considered the law and argument advanced by the parties regarding I-Flow's motion to dismiss and to strike and plaintiff's motion for leave to amend his complaint. The court finds that I-Flow fails to demonstrate why leave of court for the amendment of his claim should be denied to plaintiff in this case. Specifically, we find no prejudice to I-Flow in granting such motion.

---

[28] R. 71-1 at p. 17.
[29] <u>International Harvester Credit v. Seale</u>, 518 So.2d 1039 (La. 1988); <u>Bladen v. C.B. Fleet Holding Co.</u>, 487 F.Supp.2d 759 (W.D.La. 2007).

The court also finds that I-Flow fails to demonstrate the plaintiff's amended complaint fails to state a claim for breach of express warranty as to which relief may be granted under Fed. R. Civ. P. 12(b)(6). As above, though we do not find that plaintiff's amended complaint states a claim for punitive damages, in an abundance of caution, we will grant I-Flow's motion to dismiss any such purported claims.

Plaintiff's remaining claims for defective design, inadequate warning and breach of warranty of redhibition are preserved for further proceedings consistent with this ruling. The court will issue an order and judgment in conformity herewith.

Alexandria, Louisiana
May 31, 2012

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE